Carol Nye-Wilson
PO Box 717
Felton, CA 95018
E: carolnyewilson@yahoo.com
P: 808-756-0936

*In Pro Se*

FILED

OCT 2 6 2018

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROL NYE-WILSON,<br><br>Plaintiff,<br><br>vs.<br><br>U. S. DEPARTMENT OF EDUCATION<br>400 Maryland Avenue, S.W.<br>Washington, DC 20202,<br><br>Defendants. | Civil Action No. CV-18-01846-VKD<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[Declaration of Carol Nye-Wilson and [Proposed] Order Filed Concurrently]<br><br>Date:     December 4, 2018<br>Time:     10:00 a.m.<br>Crtrm:   2 (Hon. Virginia K. Demarchi) |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION............................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES................................... 1

I.     INTRODUCTION AND SUMMARY OF ARGUMENT...................................  1

II.    FOIA CATEGORIES AT ISSUE................................................................  2

III.   BACKGROUND REGARDING FOIA CATEGORIES..............................  3

IV.    ARGUMENT...........................................................................................10

       A.    Defendant Is Not A Law-Abiding Agency; It Refuses To Correct When Error Is Revealed; It Refuses To Produce Records Or Acknowledge Records Don't Exist..........................................................................................  11

       B.    Defendants Have Not Claimed Any Documents Sought Are Privileged............  18

       C.    Defendant Is Joyriding The Judicial Process To Conceal From The Public A Full Accounting Of What Has Happened And Its Involvement In It While Protecting Special Interest Parties Over and Against Plaintiff And Her Son......................20

       D.    Plaintiff and The Court Are Entitled To Their Reasonable Expenses Due To Defendant's Acts. .................................................................................. 22

V.     CONCLUSION.......................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## U.S. Constitution

10th Amendment.................................................................................. 6

## Federal Cases

*ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 323 (1994) ............................................. 17

*Carter v. VA*, 780 F.2d 1479, 1481-82 (9th Cir. 1986) ..................................................... 23

*Clark v. United States*, 289 U.S. 1 (1933) ................................................................. 19

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) .................. 12

*Hower, et al. v. The Roman Catholic Church Archdiocese of Santa Fe, et al.*, U.S. District Court of
  Arizona, Case No: CIV04-369 TUCDCB............................................................. 6, 7

*In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1038 (2d Cir.
  1984)............................................................................................................. 20

*Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 70, 85 (D.D.C. 2003) ...........................11, 22,
                                                                                                       24

*Limone, et al., v. U.S.*, No. 02cv10890-NMG, 2007 U.S. Dist. Lexis 54224 (D. Mass.) ............ 20

*Lion Raisins, Inc. v. U.S. Dept. of Agriculture*, 636 F.Supp.2d 1081 (E.D. Cal., 2009) ............ 18

*Mattingly v. United States*, 711 F. Supp. 1535 (D. Nev. 1989) ........................................ 23

*Mattingly v. United States*, 939 F2d 816 (9th Cir. 1991) ............................................... 23

Nat'l Immigration Project of Nat'l Lawyers Guild v. DHS, No. 11-3235, 2014 WL 6850977
  (S.D.N.Y. Dec. 3, 2014)...................................................................................... 20

*Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 792 (3rd Cir. 1994)................................. 22

*Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007) .............................. 11

*United States v. Smith*, 776 F.2d 1104, 1114 (3d Cir. 1985) .............................................. 22

*United States v. Mandujano*, 425 U.S. 564, 576 (1975) ................................................. 17

*United States Department of Justice v. Reporters Committee For Freedom Of The Press*, 489 U.S. 749, 772-73 (1989)............................................................................................... 22

*Western Center for Journalism v. IRS*, 116 F. Supp. 2d 1, 10 (D.D.C. 2000) ........................ 16

## Federal Statutes

5 U.S. Code § 552 et seq.............................................................................................11

5 U.S. Code § 552(a)(3)(A)........................................................................................ 11

5 U.S. Code § 552(a)(4)(E)(i) ................................................................................... 23

5 U.S. Code § 552(b)(6)........................................................................................... 3

18 U.S. Code § 1001................................................................................................ 4

18 U.S. Code § 1961 et seq (RICO) .......................................................................... 6, 8

20 U.S. Code § 1070 et seq (Title IV)...................................................... .................... 4, 5, 8

20 U.S. Code § 1094 (PPA)...................................................................................... 4, 5

20 U.S. Code § 1681 et seq (Title IX)......................................................................... 4, 8

29 U.S. Code § 701 et seq (Section 504)..................................................................... 4, 5, 8

31 U.S. Code § 3729 et seq (FCA) ........................................................................... 5, 8

## Federal Rules of Civil Procedure

11.................................................................................................................... 23

37(a)(5)(A) ......................................................................................................... 23

37(a)(5)(A)(ii) ..................................................................................................... 23

37(a)(5)(A)(iii) ..................................................................................... 23

**State Cases**

*State of California v. Corinthian Schools, Inc.*, Los Angeles County Superior Court, Case No. BC374999.................................................................................................. 6

**MOTION TO COMPEL PRODUCTION**
Case No. CV-18-01846

**NOTICE OF MOTION AND MOTION**

TO DEFENDANT AND COUNSEL OF RECORD: PLEASE TAKE NOTICE that on

December 4, 2018, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 2 of

the above-captioned Court, located at 280 South First Street, San Jose, California, 95113, Plaintiff

will and hereby does move the Court for an Order compelling Defendant to produce all responsive

records falsely being withheld from Plaintiff, or acknowledge such requested records do not exist.

This Motion is based upon this Notice of Motion and Motion; the Memorandum of Points and

Authorities set forth below; the accompanying declaration of Carol Nye-Wilson ("CNW") and all

exhibits thereto; all pleadings and documents on file in this action; and such other materials or

arguments as the Court may properly consider prior to deciding this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

It is unsettling what has happened, with a substantial demoralizing view of what government

will do to those who get in its way. It points to the arrogance on the part of some governmental

agencies in complying with Congressional mandates and requirements to furnish citizens with

documents appropriate under the FOIA.  In this case, the Defendant, in conjunction with the

Department of Justice ("DOJ") has covered up and used government resources to damage and destroy

anyone in its way, while joyriding the court system to further vex the Plaintiff, her son Randy and

their family members.

The questions regarding this motion before the court centers on the determination if the

Defendant has honored its requirement under law to furnish the Plaintiff with records sought under

the FOIA that the Defendant should have produced, or failed to disclose that the records don't exist,

while falsely attempting to pass off that they exist and were previously produced.

## II.    FOIA CATEGORIES AT ISSUE

Plaintiff filed on the Defendant's failure to produce on three FOIA requests with several categories. At this point, several categories of requests for 17-01585-F remain outstanding. The two other FOIA requests resolved as a direct result of the Order (Dkt. No. 23).

On April 25, 2017, Plaintiff sought 155 categories of records from Defendant. The Defendant first claimed that Plaintiff's requesters were somehow "complex." On May 15, 2017, Plaintiff prepared a 35-page response, addressing each and every category, the production, and provided background to the FOIA requests, the detailed schemes, and the false claims (CNW ¶ 6).

By May 24, 2017 the Office of the Inspector General issued its response to the FOIA request, resolving items 127-130; Complaint (Dkt No. 1, ¶ 11). The Defendant failed to produce on the other FOIA requests, forcing the filing of this lawsuit. Due to an outstanding Order, on July 2, 2018, Defendant subsequently filed a statement that was two days late, indicating no responsive records for items 36-45, 56-57, 62-63, 82-85, 87-89, 94, 95-100, and 153-155. Defendant declined to confirm or deny the existence of records responsive to 16-17, 133-134, and 150-152. In an effort to meet and confer and help the process along, Plaintiff sent Defendant an outline of the requests on July 31, 2018 (CNW ¶ 7).

On August 25, Plaintiff informed the court her side of the events through her status report that noted FOIA requests **21, 23-25, 27-45, 56-57, 62-63, 77-79, 82-85, 87-89, 99-100, 126-130,** and **153-155** were then accepted based on the Defendant's claims. Defendant should produce records for the following requests it claims exist (which don't exist, or have never been produced, and have never been previously requested): **1-20, 22, 26, 46-55, 58-61, 64-76, 80-81, 86, 90-98, 101-125, 131-132, 135-149** or **acknowledge records don't exist**. Records requests **133-134**, and **150-152** have been withdrawn. (A tally of the Defendant's production leaves103 outstanding, 47 accepted, 5 withdrawn).

(Dkt No. 21). Subsequently, Privacy Act waivers were submitted to overcome 5 U.S. C. §552(b)(6), with Defendant claiming no responsive items for 16-17 on September 10, 2018.

On September 13, 2018, Defendant produced a statement under penalty of perjury, reiterating its position of July 2, 2018. Defendant *made no effort* to produce any outstanding categories. Defendant did not object to the conclusions made by Plaintiff regarding categories **21, 23-25, 27-45, 56-57, 62-63, 77-79, 82-85, 87-89, 99-100, 126-130, and 153-155.**

On October 1, 2018, Plaintiff responded per the conditions of the Order (Dkt. No. 23) noting the following items are not complete: (**1-20, 22, 26, 46-55, 58-61, 64-76, 80-81, 86, 90-98, 101-125, 131-132, 135-149**). Plaintiff requested Defendant use Plaintiff's 90-page response and Plaintiff's additional 12-page detailed report with sections of transcripts, to go back and perform a thorough search for records for a meet and confer in order to avoid Plaintiff filing a Motion to Compel Production. (CNW ¶¶ 7, 8). Plaintiff even sent Defendant a copy of pertinent Educational Codes (CNW ¶ 9) to help in its evaluation of how Western Seminary ("WS") violated state laws. On October 19, 2018 (CNW ¶ 13), Defendant's Counsel sent an email response to Plaintiff and Plaintiff responded (CNW ¶ 14). As of the date of this motion, the Defendant has not provided under penalty of perjury all records requested over one-and-a-half-years ago or indicated that no records exist from the outstanding list noted above.

## III.    BACKGROUND REGARDING FOIA CATEGORIES

It is not disputed that in 1975 Steve Korch ("Korch") molested a child over a period of several weeks in a church office. This is not a mere salacious allegation. Since that time, he and his religious friends and attorneys have acted to cover it up, while threatening, or destroying anyone who did not parrot their approved narrative. Korch, Gary Tuck ("Tuck"), Lynn Ruark ("Ruark") and WS demand the cover up of Korch's molestation as criteria for Randy's education for two master degrees. (CNW

¶ 7, pp. 3-10, 34-37; CNW ¶ 8, pp. 5-7)  Defendant has known these facts since 2007-2008 and had

concerns (CNW ¶ 8, p. 12), but for over ten years has defended that cover up of child molestation as

criteria for Randy's education is acceptable. Secretary of Education, Betsy DeVos ("DeVos") has

gone on record regarding sexual abuse covered up by other schools (Michigan State University/Larry

Nassar[1] and University of Southern California/George Tyndall[2]).  DeVos and many of her staff are

aware of Korch's molestation and the cover up that the Defendant is aiding as criteria for Randy's

post graduate degrees.  Plaintiff and Randy are unaware of any record whereby any employee of

Defendant or the government has conveyed any revolting feelings or thoughts concerning the cover

up of molestation requirement for education, or that The Association of Theological Schools in the

United States and Canada ("ATS") and The Northwest Commission on Colleges and Universities

("NWCCU") acted to support, obfuscate, and hide the child molestations and violations of Titles IV

and IX, Section 504, and 20 U.S. Code § 1094.  Defendant continues to support and refuses to rescind

the obscene and unlawful positions of the Nancy C. Regan ("Regan") and Cheryl Oldham

("Oldham") letters of 2008 to this day. The cover up of sexual molestation of a child and fraud

against the government (which includes the involvement of certain government employees) for over

$20-million dollars is acceptable to Defendant as criteria for Randy's education.

  From 1973 to 2005, WS was not compliant with Section 504 of the U.S. Rehabilitation Act of

1973.  Just as Randy indicated WS would do in 2005, WS lied and backdated documents (18 U.S.

Code § 1001) during a federal investigation by OCR (CNW ¶ 7, pp.10-11) in order to appear

compliant with Federal law and to receive Title IV funds by deception.  In 2010, through the FOIA,

Randy discovered that in fact WS lied about and backdated documents sent to OCR in 2005 during a

federal investigation, just as he cautioned that WS would do in 2005 as a whistleblower.  In his *OCR*

---

[1] https://www.ed.gov/news/press-releases/us-department-education-launches-new-directed-investigation-msu-title-ix-compliance

*Review*, Randy alerted Secretary of Education Arne Duncan ("Duncan"), the General Counsel for the Defendant Charles Rose ("Rose"), OCR attorney Susan Spelletich ("Spelletich") and OCR-SF team leader David Rolandelli ("Rolandelli") with exhibits and a time line. Randy remains ignored. The cover up of WS' Section 504 violations and retaliations against Randy and Plaintiff are acceptable to Defendant as criteria for Randy's education. On February 1, 2011, Susan Allister filed to force divorce against Randy 30-days after he filed his *OCR Report*. She forum-shopped a divorce in England, where she was able to abduct their American son, Joel Chapel. Susan used corruption and fraud that the Defendant supports and defends in her divorce documents as a means to lend "credibility" to her divorce petition and demands against Randy. Defendant has never, ever acknowledged WS' Section 504 fraud. (CNW ¶ 7, pp.23-25)

From 2003 to present, WS has been in violation of its Program Participation Agreement ("PPA", 20 U.S. Code § 1094) with the Defendant, having engaged in promissory fraud regarding Title IV to a figure well over $20,000,000 dollars at this point. (CNW ¶ 7, pp. 11, 60-64). Defendant has repeatedly taken action against schools involved in promissory fraud. In 2016, Randy (and Plaintiff) first outlined the various schemes involving WS and provided it to Barack Obama, Loretta Lynch, James Comey, John F. Bennett and Defendant's then counsel, Michael Albanese in a *Victim Impact Statement*. <u>Randy (and Plaintiff) remain ignored.</u>

The False Claims Act ("FCA", 31 U.S. Code § 3729 – 3733) has been repeatedly used successfully, including in the Ninth Circuit, against schools committing promissory fraud against the government. 31 U.S. Code § 3730(a) states, "The Attorney General diligently shall investigate a violation under section 3729." However, the Defendant, with the involvement and knowledge of the DOJ, has acted to defend and support WS' promissory fraud, including but not limited to, the Regan

---

[2] https://www.ed.gov/news/press-releases/office-civil-rights-launches-investigation-university-southern-californias-handling-sexual-harassment-claims

**MOTION TO COMPEL PRODUCTION**
Case No. CV-18-01846

and Oldham letters of 2008 by falsely claiming that WS can make "exceptions" and that schools can

bar students and third parties from informing the government of wrong doing, providing information

to government attorneys and file complaints against the school, among many other things. This is

contrary to the California state licensing authority's position, *State of California v. Corinthian

Schools, Inc.,* Los Angeles County Superior Court, Case No. BC374999. Defendant has no authority

to trump the state in educational matters due to the 10th amendment. The Regan and Oldham letters

provide cover for WS to commit its promissory fraud by supporting the false statements made by

ATS and NWCCU in support of their member school over and against the government. The

promissory fraud accounts for more than $20-million dollars of Title IV funds since 2003.

     The Racketeer Influenced and Corrupt Organization Act ("RICO", 18 U.S.C. §§ 1961–1968)

has been previously and successfully used by a mother and her student son against the corrupt

religious out to cover up their immoral and illegal activities while damaging a student who refused to

take part in the cover up. *Hower, et al. v. The Roman Catholic Church Archdiocese of Santa Fe, et

al.,* U.S. District Court of Arizona, Case No: CIV04-369 TUCDCB[3] [4] (CNW ¶ 11). RICO applies to

the issues of this case as well, and the Defendant is well aware of what is going on and the conspiracy

between WS, ATS and NWCCU over and against the Defendant. (CNW ¶ 11, pp. 11, 19-20, 39). A

key member of the RICO enterprise is ATS employee, Jeremiah McCarthy ("McCarthy"). WS

attempted to further its corruption and collusion by naming McCarthy as an expert witness in 2010

against Plaintiff and her son's civil cases. In April 2014, McCarthy returned to a leadership position

at his home Diocese of Tucson, Arizona -- a well-known and established haven for child molesters

and sexual deviants. McCarthy returned to work under Bishop Gerald Kicanas, the same individual

---

[3] Philip Hower and his mother sued under RICO when members of the Catholic Church acted to cover up the child molestations / homosexual misconduct Hower refused to take part in covering up, and for which the Church leaders ultimately destroyed Hower's education in retaliation.
[4] In 2002, Minnesota attorney Jeff Anderson became one of the first to use RICO in child sexual-abuse cases against the Catholic Church.

**MOTION TO COMPEL PRODUCTION**
                                                                                      Case No. CV-18-01846

*Hower* sued over his education in 2004, and the same Bishop noted in the massive cover up of priest sex abuse cases in Chicago, that also includes another ATS seminary cover up (Mundelein Seminary at the University of St. Mary of the Lake). Covering up child molestation by the religious and linking it to education has been taken from the local level to the national level, with the defense by the Defendant using public money concerning the 270 schools nationally accredited by ATS.  Plaintiff and her son are unaware of any private or public statement by DeVos, or any member of her staff, repudiating the acts of corruption and fraud by WS, Korch, NWCCU, ATS, or their various attorneys to cover up what Korch, WS, ATS, NWCCU has committed and continues to do, or about a national syndicate that was formed between accreditors and schools to cover up child molestation with education.

The Defendant has and continues to support educational corruption involving WS, ATS and NWCCU with unlawful claims that are cloned in the Regan letters of 2008.  Defendant is well aware that rescinding the Oldham and Regan letters opens the door for suits against WS, ATS and NWCCU and will expose to the public the Defendant's shady activities supporting corruption.  Through a FOIA, Plaintiff learned that it was the Office of General Counsel/Kent Talbert ("Talbert") instructing Defendant's employees back in 2008 to ignore Plaintiff, her son and their attorney, John Hannon. This instruction remains as of this motion and Defendant has never produced any records rescinding OGC/Talberts instruction.

The March 14, 2006 Settlement Agreement is being used as a vehicle for fraud against Randy, Plaintiff, and the Defendant, and the Defendant is well aware of it. (CNW ¶ 7, pp. 11-19; ¶ 8, p. 12). Plaintiff and her son, Randy were forcibly gagged by threats, retaliation and the extortion of Randy's education—including Randy's previously earned, graded, paid for and transcripted credits, and any

MOTION TO COMPEL PRODUCTION
Case No. CV-18-01846

further education leading to a Master of Divinity ("M.Div.") and a Master of Theology ("Th.M.").

Defendant supports, defends and has never modified or rescinded its position by Regan's and

Oldham's letters in 2008 that Randy and Plaintiff are barred from any administrative complaints, and

are prevented from working with government attorneys, producing evidences, testimony, etc. for the

government to investigate or file complaints such as FCA or Criminal RICO cases. Defendant and the

DOJ effectively destroyed any possible FCA or RICO case at this point.

In order to detract from what is going on, the enterprise members including Defendant and the

DOJ, have acted to support and defend the Section 504, Title IV, IX failures and retaliation by WS

against Randy (a whistleblower) as a way to "equalize" the continued corruption (CNW ¶ 7, pp. 20-

23), by making and permanently labeling Randy as "America's rapist and immoral student." To the

extent that DeVos and her staff continue to support corruption defies all reason and logic.  "The

current Kavanaugh confirmation circus is the logical expression of the Obama Administration's

eight-year subversion of due process in matters of accusations of sexual assault."[5] Yet Defendant's

aid with the DOJ continues against Randy for political reasons to detract and obscure the record.

The principle party used as a weapon by the Defendant is Assistant United States Attorney

James A. Scharf ("Scharf"), who since 2011 has acted through shady government tactics to cover up,

mislead, and obfuscate to the public and court for the government what is going on, while

psychologically torturing and emotionally water boarding Randy to the point of irreparable damage.

Scharf has now escalated matters to being out of control.  (CNW ¶ 7, pp. 25-28).  In 2012, Plaintiff

made a clear warning regarding Scharf and his morbid and fanatical acts to bear his teeth against

Plaintiff and her son. (CNW ¶ 15). Scharf's actions in 2012 irreparably harmed Plaintiff's son and

escalated matters to a boiling point.  The coordinated smear campaign by the Defendant, DOJ and in

particular, Scharf, has been used to support and cover for the unaccountable government bureaucrats who repeatedly prioritized deep-state extreme agendas over and against the U.S. Constitution, federal laws and regulations, fundamental fairness, rule of law, and basic human decency. The resulting damage is now irreparable and catastrophic. (CNW ¶ 7, pp. 78-89). The impact of the inflammatory and incredibly disingenuous activities in concert with other enterprise members can't be overstated. There is no recovery for what the Obama Administration and Scharf did to Plaintiff's son in 2012. None. Even if U.S. Attorney General Jeff Sessions wanted to, Congress bars him. But this did not stop the Defendant and the DOJ. Defendant's use of Scharf as weapon, and Scharf's actions in 2012 made resolution impossible.

Randy took out a student loan for $40,000 to further his education that required a *valid* master degree. The enterprise members, including the Defendant (via Regan and Oldham letters), insist the corrupt education criteria WS forced on Randy and Plaintiff in the settlement agreement is valid. As of the date of this motion, the Defendant maintains Regan's and Oldham's faulty letters insisting that criteria to recover previously earned, graded, paid for, and transcripted education, and any additional education demanding cover up of child molestation and fraud against the government is valid, based upon two accreditors colluding together with WS during a federal investigation. Randy's loans are linked to the Defendant, and the Defendant's position is self-serving to cover up its part in corruption and fraud. Defendant has repeatedly threatened Randy, and has harassed Randy and Plaintiff through its agents by telephone about Randy's education loans that were based upon education fraud and corruption as master degree criteria. Defendant has threatened Randy with and without Navient, including threats for wage garnishment by the IRS for wages Randy doesn't have. Defendant has now sent Randy to collection, including by the disreputable Account Control Technologies, adding

---

[5] https://amgreatness.com/2018/09/23/obama-won/

MOTION TO COMPEL PRODUCTION
Case No. CV-18-01846

costs, fees, and stress to Randy. Randy's credit is destroyed. Defendant has harassed Randy and Plaintiff through its agents by phone calls about Randy to former renters of Plaintiff. Randy notified Defendant and DeVos to cease and desist. Harassment by Defendant and DeVos willfully persists in spite of knowing the details of WS' fraud and corruption, and all the other issues involved.

Randy married Susan Allister in 2008. Susan is the daughter of Lord Donald Allister, Bishop of Peterborough, and member of the House of Lords. (CNW ¶ 7, pp. 23-25). The impact of the inflammatory and incredibly disingenuous activities and statements by the Defendant and others not only destroyed their marriage, but also seriously damaged Randy and Susan's son, Joel, for life. Joel Tristan Allister Chapel will be ten years old on February 7, 2019. He doesn't know how much his daddy loves him, because Susan vowed to keep him from Randy since Joel was 22-months-old due to this case. Defendant's acts of non-enforcement, cover up, and deceit have had a long-ranging impact.

Claims Plaintiff presents here are not spurious. Those seeking material facts of truth about corruption within government to expose it don't tolerate coordinated campaigns to obscure and conceal it—such as the Defendant and DOJ has conducted against Plaintiff and her son. A favorable judgment in this motion will ensure the very thing the Defendant is fighting so hard to cover up from the nation – that the Defendant is vile, corrupt, and will destroy anyone in its way. The Defendant is playing and using the Court's processes to cover up and obscure its part in corruption against Plaintiff and her son.

## IV.    ARGUMENT

Everyone makes choices, including governments, but the wholesale support and defense by the Defendant concerning the enslavement of students and their family members comes with consequences. In a governmental system like ours in America, one consequence is the public learning that its tax money is being spent to harass, intimidate, abuse and destroy political targets that

refuse to go along with agency corruption—including cover up of child molestation and fraud against the government. One way to counter enslavement by government is through transparency laws, such as the Freedom of Information Act ("FOIA"). Cataclysmic failure to enforce laws, entrench terrible human suffering at the hands of the immoral is the legacy of the Defendant, and in particular, Margaret Spellings ("Spellings") and her staff who prostituted the Defendant to the pro-business lobby and the corrupt Religious in America. Without the despotic inroads by the ruling political elite, the corrupt Religious would not have been able to fulfill their corruption. The specific categories of records Plaintiff seeks via the FOIA focus on shining a light on Defendant's collusion with WS and its accreditors in acts of educational fraud perpetrated into higher education by abuse of power to obstruct justice--as opposed to the preferred narrative the Defendant wants to publicly project about itself and this case.

### A.    Defendant Is Not A Law-Abiding Agency; It Refuses To Correct When Error Is Revealed; It Refuses To Produce Records Or Acknowledge Records Don't Exist.

The FOIA requires federal agencies to make their records promptly available to any person. 5 U.S.C. § 552(a)(3)(A).  Importantly, "the FOIA is intended to work without court intervention; in a perfect world, a requester submits a request to an agency, and the agency responds to the request," *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 70, 85 (D.D.C. 2003), but that is not the case here. Defendant is using the judicial process as a means to frustrate Plaintiff and her family.  The Defendant claims records have been produced that either *have never been produced or do not exist*, to be used in future claims in order to deceive the court and public.  The FOIA is a process designed not to obscure the truth, but to discover it.  "FOIA is to be broadly construed in favor of disclosure. Second, its exemptions are to be narrowly circumscribed." *Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1226 (10th Cir. 2007). In other words, "disclosure, not secrecy, is [FOIA's] dominant

objective." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks omitted).

The current outstanding records categories consist of **1-20, 22, 26, 46-55, 58-61, 64-76, 80-81, 86, 90-98, 101-125, 131-132, 135-149**. Plaintiff has made detailed meet and confer documents regarding categories for the last one-and-one-half-years in an effort for resolution without court intervention (CNW ¶¶ 6, 7, 8). However, attempts to meet and confer with Defendant about material facts are pointless as Defendant acts in bad-faith. The Defendant wants to maintain the fraud and corruption, and it is manipulating the judicial process to its advantage in order to secrete its ongoing involvement, because disclosure threatens Defendant's public embarrassment.

At the outset, the Defendant claims under penalty of perjury records exist and have been produced. The court generally accepts statements by agencies on good faith. By doing that, the Defendant uses the court's vulnerability as a legal advantage to force this court to find in its favor. So let's look at several of the claims the Defendant has made as compared to what Plaintiff has written:

| Item(s) | Defendant's Position | Plaintiff's Expectation | Index Into 90 Page Report | Plaintiff's Addition Meet and Confer Obligation Description |
|---------|---------------------|------------------------|---------------------------|-----------------------------------------------------------|
| 1-9, 114-117 | Prev. produced, nothing since April 25, 2017 | Expect No Records | pp. 55-57 | • The letters by Nancy C. Regan and/or the Cheryl Oldham have *never* been rescinded or withdrawn or modified.<br>• There were *never* any communications from anyone informing us of their rescission, withdrawal, or modification.<br>• My son, our attorney, and I repeatedly requested correction of those letters.<br>• We were ignored per Office of General Counsel/Kent Talbert's "memo" instead. |
| 10-15, 16-17 | Prev. produced, nothing since April 25, 2017; nothing for 16-17 | Expect Records | pp. 53-55, 57 | • Our FOIA and Tort lawsuits in 2012 named the parties cited, including ATS; the Defendant teamed up with ATS over and against Randy, Joel, Dale and me in 2012.<br>• James A. Scharf is the primary contact for Defendant, and he is handling the overall case. We are well aware that Scharf and others continue to speak to 3rd parties, including Western and that there is communication between Defendant and DOJ concerning this case and those involved. |

| | | | | |
|---|---|---|---|---|
| | | | | • These records have *never* previously been requested by me or produced by the Defendant.<br>• Because fraud against the government is part of this case, there is a crime-fraud *exception* allowing record production by the Defendant.<br>• FBI and Marshals came falsely claiming Randy threatened to kill James A. Scharf.<br>• DeVos and/or her staff claimed Randy wrote a letter threatening to kill DeVos, who then involved the DOJ who sent two U.S. Marshals to my home seeking Randy. Such a letter has *never* been produced, because it *never* did exist, and yet the Marshalls claimed it existed. |
| 18-19 | Prev. produced, nothing since April 25, 2017 | Expect Records | pp. 57-58 | • Defendant holds a student loan by Randy that Navient managed.<br>• Defendant and Navient communicated about that loan.<br>• Defendant has used public money to support and defend the enterprise, including that the education/degree Randy took was valid, all the while driving him into the ground to nothingness.<br>• Defendant then threatened Randy with the IRS.<br>• Randy has sent cease and desist letters, including to DeVos.<br>• Now Defendant has used Debt Collectors/Account Control Technologies to harass Randy, me, and others about Randy to collect on a student loan that was based upon master degree education criteria requiring us to cover up child molestations and fraud against the government that the Defendant's Regan and Oldham letters claim is valid criteria for education.<br>• Defendant's acts and Regan and Oldham letters obstruct our justice and support collusion between Western Seminary, ATS, NWCCU, and Defendant staff, and impair Randy's ability to take legal action against Western and other enterprise members.<br>• Communications by and between Defendant and Navient exist.<br>• Records are previously *not produced*. |
| 20, 22, 26 | Prev. produced, nothing since April 25, 2017 | Expect No Records | pp. 58-59 | • In fact and in truth, both ATS and NWCCU have accreditation policies requiring Title IV compliance and they both prohibit Title IV fraud.<br>• Reviews of ATS' and NWCCU' websites indicate no public policy or accreditation standard allowing schools to commit fraud against the government.<br>• It is completely *outrageous* that something like this is being fought over by the Defendant, and that the Defendant actually claims such records exist. |
| 46-49, 50-55, 58-61, 64 | Prev. produced, nothing since April 25, 2017 | Expect No Records | pp. 68-70 | • Reread the Nancy C. Regan and ATS/NWCCU letters in 2008.<br>• Reread the settlement agreement which the Defendant has, and then section "March 14, 2006 Settlement Agreement is a Vehicle for Fraud" in my previous response to Defendant.<br>• ATS/NWCCU willfully took part in the various schemes with Western Seminary, et al. over and against |

| | | | | |
|---|---|---|---|---|
| | | | | the Defendant during a federal investigation in 2007-2008, as Western recruited ATS/NWCCU to do so on September 15, 2006.<br>• These requests use the phrase "…is not compliant…" or  "… is not reasonable…"<br>• These records have *never* previously been requested or produced because they don't exist.<br>• It is completely *outrageous* that something like this is being fought over by the Defendant, and that the Defendant actually claims such records exist. |
| 65-69 | Prev. produced, nothing since April 25, 2017 | Expect No Records | p. 71 | • These records have *never* previously been requested or produced because they don't exist.<br>• Western Seminary has received and continues to receive Title IV money according to it's own statements that the Defendant has produced, as well as public statements the Defendant has made regarding Western Seminary's Title IV funding -- (obtained under "Promissory Fraud.")<br>• The 2013 Program Participation Agreement ends at the end of 2018. By the time the Defendant reads through this, Western Seminary is or shortly will be in the process of seeking a fourth Program Participation Agreement with the Defendant for Title IV funds (under the same and continued "Promissory Fraud.")<br>•  Regardless of anything the Defendant does now I intend to bring these issues to the attention of Judge DeMarchi. |
| 70-76 | Prev. produced, nothing since April 25, 2017 | Expect No Records | pp. 71-72 | • These records have *never* previously been requested or produced.<br>• Federal laws involving schools are tied to Federal funds and one of the conditions to receive federal funds is to obey the law which Western failed to do since before 2003 to present while falsely claiming its compliance to obtain Title IV funds.<br>• Reread the OCR review by Randy<br>• Reread the Victim Impact Statement by Randy<br>• Reread the Title IX report by Randy.<br>• Reread the 90-page report I previously sent you, regarding "Promissory Fraud" |
| 80-81 | Prev. produced, nothing since April 25, 2017 | Expect No Records | pp. 72-73 | • Review No. 1-9, 114-117.<br>• These records have *never* previously been requested or produced. |
| 86 | Prev. produced, nothing since April 25, 2017 | Expect No Records | p. 73 | • Review No. 1-9, 114-117.<br>• Review No. 135-149<br>• These records have *never* previously been requested or produced. |
| 90 | Prev. produced, nothing since April 25, 2017 | Unknown | p. 73 | • No record has ever been produced and I have *never* previously requested this record.<br>• Plaintiff has no copy of this record, and that is why Plaintiff requests it. |
| 91 | Prev. produced, nothing since April 25, 2017 | Expect No Records | p. 73 | • Article Five of the United States Constitution describes the process whereby the Constitution, the nation's frame of government, may be altered or overridden.<br>• It's *obscene* that the Defendant is fighting over this.<br>• Since Ms. Siegelbaum is an attorney who takes an oath |

| | | | | |
|---|---|---|---|---|
| | | | | to uphold the U.S. Constitution and state and federal laws, there simply is no reasonable excuse for Ms. Siegelbaum's answer or the Defendant's position.<br>• Regardless of anything your client does now I intend to bring this item and others to the attention of Judge DeMarchi. |
| 92-93 | Prev. produced, nothing since April 25, 2017 | Expect No Records | p. 94 | • The Defendant's official narrative and position since the 2007-2008 time frame of letters by Regan and Oldham is that both ATS and NWCCU are compliant with 34 CFR 602.15(a)(6) related to Western Seminary.<br>• However, on July 17, 2008, Chuck Mula told us he thought Western Seminary and ATS were *incestuous,* which violates 34 CFR 602.15(a)(6) prohibiting conflicts of interest and the appearance of conflicts of interest. |
| 94-98 | No such responsive records | Expect Records | pp. 51-52 | • In 2012, the Defendant played these games to mislead the court.<br>• It appears Defendant is playing more games and continues to mislead.<br>• Per Defendant, at a minimum, records for #95, #96, #98 exist. |
| 101-106, 108-113, 118-121 | Prev. produced, nothing since April 25, 2017 | Unknown, or likely no records | pp. 74-76 | • It is the Defendant's narrative since the 2007-2008 time frame of the Regan and Oldham letters, that Western, ATS and NWCCU and their various agents have done nothing wrong.<br>• It appears Defendant is playing more games and continues to mislead. |
| 107 | Prev. produced, nothing since April 25, 2017 | Likely records | p. 76-77 | • Chuck Mula lied under oath in 2008-2009 time frame involving my first FOIA case.<br>• Defendant settled by paying half of my attorney costs and produced some records that under oath Mula had claimed didn't exist.<br>• The produced records demonstrated that additional records existed and were withheld by Mula. |
| 122-125 | Prev. produced, nothing since April 25, 2017 | Expect No Records | p. 77 | • It is *obscene* that the Defendant wants to fight over this.<br>• Since Ms. Siegelbaum is an attorney who took an oath to uphold the U.S. Constitution and state and federal laws, there simply is no reasonable excuse for Ms. Siegelbaum's answer or Defendant's position.<br>• Regardless of anything your client does now I intend to bring this item and others to the attention of Judge DeMarchi. |
| 131-132 | Prev. produced, nothing since April 25, 2017 | Expect No Records | p. 78 | • These records have *never* previously been produced or previously requested.<br>• I have no copies of this record, and that is why I requested it. |
| 135-149 | Prev. produced, nothing since April 25, 2017 | Expect No Records | pp. 78-89 | • At no time did OCR in 2005 investigate Randy's retaliation and Title IX issues in 2005. Rather, in writing, OCR actually blames Randy.<br>• OCR actually failed in bring Western into compliance with Section 504, with Western lying and backdating records to dishonestly fool OCR.<br>• Subsequently, in 2012 Defendant claimed it could not get involved.<br>• The letters by Nancy C. Regan or the Cheryl Oldham |

| | | | | have *never* been rescinded or withdrawn or modified and there is no communication for it.<br>• There are no means to undo the Defendant's and Scharf's actions and false claims in 2012 regarding Randy<br>• The Defendants continue to act to cover for the enterprise, including sharing this FOIA lawsuit information with their enterprise partner Western Seminary, et al.<br>• Defendant itself and through its agents continues causing further damage, costs and problems, and that also includes my business contacts.<br>• Defendant has been repeatedly notified over a period of 10 years that its actions would cause damage or have caused catastrophic and irreparable damage.<br>• Catastrophic and irreparable damage has now occurred. |
|---|---|---|---|---|

The Defendant continues to play games to distort and confuse the record because certain of Defendant's employees are involved in the corruption. As such, the Defendant has and continues to cover for the illegal activities by making false claims regarding the records being sought, including the illegal activities directed at Defendant, even though the Defendant is aware of the illegal activities and that the acts are also meant to defraud the Defendant. (CNW ¶ 6, pp. 1-20).

Additionally, the Defendant has had three separate instances whereby Plaintiff has gone out of her way to describe and articulate what is missing, what should exist and not, so that the Defendant could correct, produce and avoid court intervention. (CNW ¶¶ 6, 7, 8). Rather than self-correcting, Defendant continues to explore just how far it can push the court, by using a court's vulnerability ("good will afforded to agencies") as a legal advantage against the court itself. This is infelicitous and an act of bad faith. *Western Center for Journalism v. IRS*, 116 F. Supp. 2d 1, 10 (D.D.C. 2000) (" what is expected of an agency is that the agency admit and correct error when error is revealed"), aff'd, 22 F. App'x 14 (D.C. Cir. 2001)

With regard to the Defendant's perjury, the Supreme Court has spoken forcefully about perjury and other forms of obstruction of justice: "Perjured testimony is an obvious and flagrant

affront to the basic concepts of judicial proceedings. Effective restraints against this type of egregious offense are therefore imperative." *United States v. Mandujano*, 425 U.S. 564, 576 (1975) (plurality opinion). The insidious efforts of perjury occur whether the case is civil or criminal. The Supreme Court has considered a false statement made in a civil administrative proceeding: "False testimony in a formal proceeding is intolerable.  We must neither reward nor condone such a 'flagrant affront' to the truth-seeking function of adversary proceedings... Perjury should be severely sanctioned in appropriate cases." *ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 323 (1994). Stated more simply, "[p]erjury is an obstruction of justice."[6]  To the extent that Ms. Siegelbaum claims under penalty of perjury that categories (just three examples) No. 26 "Any record of a government policy that schools can commit fraud against the government." No. 91"Any record granting power to the U.S. Department of Education administrators and/or legal counsel to override the U.S. Constitution and Amendments," and No. 123 "Any record that Nancy C. Regan's position at the Department of Education allows her to modify any part of the Higher Education Act of 1965 or 20 US Code § 1099b (as amended)" exist and were produced by the Defendant calls into question not only the integrity of the Defendant's position and search over all categories in question, but also just how far Defendant is willing to take its subterfuge directed at the court itself.

In fact Ms. Siegelbaum's declaration (CNW ¶ 10) is questionable, flawed, and reasonably calculated to not uncover all relevant documents.  In Siegelbaum's declaration and focusing on paragraphs 3-5, and 8, she doesn't provide any information on what records were searched, by what office the search was conducted, what procedures or methods were utilized, the search terms utilized

---

[6] *United States* v. *Norris*, 300 U.S. 564, 574 (1937). There is occasional misunderstanding to the effect that perjury is somehow distinct from "obstruction of justice." While the crimes are distinct, they are in fact variations on a single theme: preventing a court, the parties, and the public from discovering the truth. Perjury, subornation of perjury, concealment of subpoenaed documents, and witness tampering are all forms of obstruction of justice. (cited from footnote 26 in "Referral From Independent Counsel Kenneth W. Starr In Conformity With The Requirements Of Title 28, United States Code, Section 595(C), p. 7)

MOTION TO COMPEL PRODUCTION
Case No. CV-18-01846

(if any), or the scope of the search. Her declaration is devoid of details concerning who she spoke with or worked with ('the Department determined that any records that may be responsive…') or what "Department's files" she is referring too. *Lion Raisins, Inc. v. U.S. Dept. of Agriculture*, 636 F.Supp.2d 1081 (E.D. Cal., 2009) ("…does not provide any information on what records were searched, what procedures or methods were utilized, the search terms utilized (if any), or the scope of the search. Her declaration is devoid of details on the searches for responsive records. Based on deficiencies in Blazejak's and Sanders's declaration, the current record does not provide a sufficient basis to conclude that the USDA conducted a search reasonably calculated to uncover all relevant documents. At this time, summary judgment for the USDA is inappropriate."

Obviously, the easiest solution for the court is to cause the Defendant to provide the requested records on a per category basis, and each time the Defendant is unable to produce said records for a category, to fine the Defendant for making claims because they were made under penalty of perjury.

## B.    Defendants Have Not Claimed Any Documents Sought Are Privileged.

Defendant has not asserted attorney/client, attorney work product, and deliberative process privilege with respect to the records at issue. Rather Defendant has repeatedly claimed it has already produced records. Arguing from the standpoint that records were to exist and have been previously produced (which is a false claim by the Defendant in the first instance), Defendant is therefore not entitled to any new claim of attorney/client, attorney work product, and deliberative process privileges, should the Defendant be required to produce records, it has falsely claimed to have originally produced. The DOJ guidance suggests this point outright.

> Another important aspect of the attorney-client privilege is its particular confidentiality requirement; that is, the privilege will be found to be waived when the communication is disseminated outside of the traditional attorney-client relationship, even when such dissemination is entirely within the agency. (CNW ¶ 12).

Inversely, by declaring under penalty of perjury that records have been previously produced, Defendant has waived any privilege outrightly as the DOJ finally notes, "to protect against waiver of this privilege, agencies should exercise particular care, even more than that required for other privileged materials, to limit the dissemination of such attorney-client information to those who truly have a 'need to know.'" (CNW ¶ 12). As such and if ordered, Defendant should make available all attorney/client, attorney work product, and deliberative process privilege records that match its previously claimed set it is (falsely) referring to under oath.

To the extent that any such documents were allegedly privileged, Defendant would have been required to produce a log with sufficient specificity to enable the Plaintiff to assess the claim of privilege. In fact, no log has ever been produced by Defendant, because no records have ever been claimed as privileged.

However, even if Defendant were to claim privilege, it must produce all records due to the crime-fraud exception. Communication between clients and their lawyers isn't privileged if it is made with the intention of committing or covering up a crime or fraud. The exception applies if the client was in the process of committing or intended to commit a crime or fraudulent act, and the client communicated with the lawyer with the intent to further the crime or fraud, or to cover it up. This could range from "suborning perjury" – like asking Mr. Pyle (or any other DOJ attorney) to present claims the Defendant knows is false in order to mislead the court; destroying or concealing evidence or maintaining and covering up the criminal and fraudulent acts of Western Seminary, et al., ATS, et al., NWCCU, et al., who have targeted the Defendant with educational and promissory fraud. *Clark v. United States*, 289 U.S. 1 (1933) ("A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told."). This exception derives from the fact that "advice in furtherance of such goals [of fraud or crime] is

socially perverse, and the client's communications seeking such advice are not worthy of protection." *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984). In view of FOIA, *Nat'l Immigration Project of Nat'l Lawyers Guild v. DHS*, No. 11-3235, 2014 WL 6850977 (S.D.N.Y. Dec. 3, 2014) ("the Court is skeptical of the government's contention that the crime-fraud exception has no applicability in the FOIA context." That court explained, "it is utterly implausible to suppose that Congress intended FOIA Exemption 5 to shield government documents when they were created for the purpose of furthering a crime or a fraud.")

### C.   Defendant Is Joyriding The Judicial Process To Conceal From The Public A Full Accounting Of What Has Happened And Its Involvement In It While Protecting Special Interest Parties Over and Against Plaintiff And Her Son.

Just as the corrupt actors involved at WS, don't want to be held accountable or known for what they are actually doing, so is the case with the employees of the government and most certainly the Defendant. Working together and obfuscating the record will hold no one accountable, while maximizing the greatest damage to Randy, his family, Plaintiff and Plaintiff's husband.

This FOIA case and motion is just the latest act by the Defendant to make things worse at the expense of Plaintiff's son, husband, grandson, and Plaintiff. This is why Plaintiff's previous CMC statement noted, "the apparent litigation strategy by Defendant is to claim records were produced (which either don't exist or have never been previously produced or requested), and therefore, no controversy exists forcing you the Judge to throw the case out on *their* summary judgment claims. Defendant would then use this ruling in the future to make additional misrepresentations to the public and Court. Defendant expects to succeed with its underhandedness and game playing." (Dckt No. 21)

This is not the first time the government has used its position to cause damage or make things worse for individuals and their family members it was targeting for no good reason. This case resembles the case of *Limone, et al., v. U.S., No. 02cv10890-NMG, 2007 U.S. Dist. Lexis 54224 (D.*

*Mass.). Limone* demonstrates the length government will go to harm people for political reasons, instead of correcting itself. Judge Nancy Gertner noted in her bench order regarding the actions taken against these men by the government: "Now is the time to say and say without equivocation: This 'cost' to the liberty of four men, to our system of justice is not remotely acceptable. No man's liberty is dispensable. No human being may be traded for another. Our system cherishes each individual. We have fought wars over this principle. We are still fighting those wars." (Dckt. 565, p. 6.).

Judge Gertner further observed: "Framing innocent men for a capital crime, prolonging their suffering for decades while they made futile attempt after attempt to win their freedom, thwarted at every turn these are acts beyond all bounds of decency. Perverting the system of justice they had sworn to uphold that has no place in a civilized community. The plaintiffs who knew themselves to be innocent were wrongfully convicted. Three were told that they were to be executed, another that he would live the rest of his natural born life behind bars. There is no way to describe that kind of horror than as so severe and of such a nature that no reasonable person could be expected to endure it. The FBI's conduct was intentional, it was outrageous, it caused plaintiffs immeasurable and unbearable pain, and the FBI must be held accountable." (Dckt. 565, pp. 165-166). For a comparable to what Plaintiff and her family have gone through as compared to *Limone* see (CNW ¶ 7, pp. 78-89).

But the government is still not done causing problems and harm to Plaintiff and her son. In the ongoing effort to intimidate Plaintiff and her son, Defendant, DeVos and/or her staff claimed Randy sent a letter threatening to kill DeVos, who involved the DOJ. Deputy U.S. Marshals Mr. Gage Gawibe and Ms. Angelique Poe came to Plaintiff's doorstep in Hawaii to confront Randy and haul him away. Now months later, the-out-of-control Defendant claims there are no records between the DOJ and Defendant since the filing of Plaintiff's FOIA requests, yet in January of 2018, two Marshals claimed otherwise. Defendant claims under penalty of perjury no record exists between the

DOJ and Defendant, yet Deputy U.S. Marshals Mr. Gage Gawibe and Ms. Angelique Poe claim

otherwise. Who is telling the truth? Unless Defendant produces a record (that doesn't exist), that two

Marshals claim Randy threatened to kill DeVos, Defendant/DeVos/DOJ has a lot to answer for.

  Forcing the production of records, or the admission that records don't exist, furthers the

position that hiding knowledge from the public, intimidating and abusing Americans for political gain

will not be tolerated. What the DOJ and the Defendant has done is beyond outrageous. The

Defendant must be held accountable. Plaintiff's son, Randy, Randy's son Joel and even his ex-wife

and her family, and Plaintiff's husband and Plaintiff have been put through years of abuse,

needlessly, so that the Defendant and those it acts to protect, can masquerade as if nothing is wrong,

while manipulating the system to maintain their abuse.

  Therefore, it is imperative that the Defendant is forced to produce records, or admit that

records don't exist. "[T]he public has a substantial interest in the integrity or lack of integrity of those

who serve them in public office." *United States v. Smith, 776 F.2d 1104, 1114 (3d Cir. 1985).* "[A]n

informed public is desirable, that access to information prevents governmental abuse and helps secure

freedom, and that, ultimately, government must answer to its citizens." *Pansy v. Borough of*

*Stroudsburg, 23 F.3d 772, 792 (3rd Cir. 1994).* "[A] democracy cannot function unless the people are

permitted to know what their government is up to." *United States Department of Justice v. Reporters*

*Committee For Freedom Of The Press, 489 U.S. 749, 772-73 (1989).*

### D. Plaintiff and The Court Are Entitled To Their Reasonable Expenses Due To The Defendant's Acts.

  "[t]he FOIA is intended to work without court intervention." *Landmark Legal Found. v. EPA,*

272 F. Supp. 2d 70, 85 (D.D.C. 2003). When a motion to compel is granted, the Court "must...

require the party ... whose conduct necessitated the motion ... to pay the movant's reasonable

expenses incurred in making the motion, including attorneys' fees." Fed. R. Civ. P. 37(a)(5)(A); see

Fed. R. Civ. P. 37, 1970 adv. comm. notes  ("expenses should ordinarily be awarded").  Federal

courts don't grant attorneys' fees to both attorneys and laypersons who have represented themselves

in FOIA suits. However, unlike attorney fees, the costs of litigating a FOIA suit can reasonably be

incurred by and awarded to, even a pro se litigant who is not an attorney. 5 U.S.C. § 552(a)(4)(E)(i).

*Carter v. VA*, 780 F.2d 1479, 1481-82 (9th Cir. 1986).

Neither of the only potentially applicable exceptions to an award of expenses – either that the

opposing parties' position was "substantially justified" or that other circumstances exist that would

"make an award of expenses unjust" (Fed. R. Civ. P. 37(a)(5)(A)(ii) & (iii)) – apply here. It can

hardly be said that Defendants were substantially justified in asserting its position that records were

previously produced that never have or could have existed. Nor are there any circumstances that

would make an award of expenses unjust. To the contrary, an award of expenses will further the

purpose of Fed. R. Civ. P. 37(a)(5)(A) by deterring abuses requiring court involvement.

Plaintiffs' expenses include pacer.gov, mailing, printing, parking, internet among other things.

Plaintiff will supplement and detail her expenses upon the filing of her reply brief.

In addition, this Circuit has recognized that the United States is *not immune* from FRCP 11

sanctions. *Mattingly v. United States*, 939 F2d 816 (9th Cir. 1991) (A sanction pursuant to Fed. R.

Civ. P. 11, requiring it to pay $1,000 to the Clerk of the District Court.  The district court announced

the sanction in a published opinion to serve as a public reprimand to the government attorney

involved. *Mattingly v. United States*, 711 F. Supp. 1535 (D. Nev. 1989)).

The Defendant has used valuable Court resources that could have been spent elsewhere.

"Sanctions are appropriate where there is prejudice to the judicial system in the form of "an

intolerable burden on a district court requiring the court to modify its docket to accommodate the

delay caused by the contumacious party…Arguably, any involvement by the courts in a FOIA dispute is burdensome… sanctions are appropriate for conduct that is disrespectful to the court and to deter similar misconduct in the future." *Landmark Legal Found*. While the DOJ repeatedly acted to support and defend the rebellious Defendant's acts, it used the valuable resources that could have been applied and better served the People and by controlling its client, but it instead enables Defendant's wrong doing. Defendant made little to no effort to meet and confer with Plaintiff, and only has when the court requires it. Defendant is more interested in playing games, joyriding the judicial process, and performing some sort of dysfunctional hazing of a new magistrate judge. Even if the Defendant would rectify what it has done after Plaintiff filed this motion, that wouldn't change things. It is well within the discretionary right of the court to impose a penalty that Defendant forced this motion to be filed in the first instance, rather than working through the issues one-and-one-half-years ago without intervention by the court.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the court grant its motion and order Defendant to produce within ten (10) calendar days of the date of its order all responsive documents in their entirety, and at its discretion any other relief or action it deems reasonable. A proposed order is submitted along with this Motion.

Dated: October 26, 2018

Respectfully submitted,

Carol Nye-Wilson
P.O. Box 717
Felton, CA 95018
Tel:    808/968-7423
Email: carolnyewilson@yahoo.com
*In Pro Se*

MOTION TO COMPEL PRODUCTION
Case No. CV-18-01846